IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| MARY PANOZZO, as Independent Administrator of the Estate of SYDNEY PANOZZO, deceased,<br><br>Plaintiff,<br><br>v.<br><br>PATRICK WATKINS, the SHERIFF OF PEORIA COUNTY, individually and in his official capacity; and PEORIA COUNTY, ADVANCED CORRECTIONAL HEALTHCARE, KIMANI FITZGERALD, SHANNON MILLER, NURSE RYAN, ROE FITZGERALD, K. KERANS, JEWEL SANDERS, J. SHIVERS, JAMES RYGH, RUSSELL OWENS, CANTERBURY,<br>Defendants. | Case No. 24-CV-1227<br><br>JURY DEMANDED |

**COMPLAINT**

Plaintiff Mary Panozzo (hereafter, "Plaintiff"), as Independent Administrator of the Estate of Sydney Panozzo, (hereafter, "Sydney"), by counsel Meyer & Kiss, LLC, alleges as follows:

1. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of the rights of Ms. Sydney Panozzo, Plaintiff's Decedent, secured by the United States Constitution, and pursuant to state law.

**JURISDICTION & VENUE**

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

3. Venue is proper under 28 U.S.C. § 1391(b) because one or more of the defendants reside in this judicial district and all defendants are residents of Illinois. Further, a substantial part of the events and omissions giving rise to this claim occurred within this judicial district.

## PARTIES

4. Plaintiff is the duly appointed independent administrator of Sydney's estate under Case No. 24-PR-6 (Ill. Cir. Ct., Peoria Cnty.).

5. At all relevant times, Sydney was a pre-trial detainee confined in the Peoria County Jail in Peoria, Illinois, a correctional facility maintained by Defendant Peoria County Sheriff CHRIS WATKINS.

6. Defendant WATKINS is the Sheriff of Peoria County, Illinois, and is sued in his individual and official capacities.

7. Each of the individual correctional officers referenced below were agents of Defendant WATKINS, and were acting within the scope of their agency, and under color of law, at all times mentioned herein.

8. Defendant PEORIA COUNTY, Illinois, is joined in this action pursuant to Carver v. Sheriff of LaSalle County, 324 F.3d 947 (7th Cir. 2003).

9. At all material times, Advanced Correctional Healthcare "ACH" was and is responsible for the hiring, retaining, training, and supervising of its employees and agents, and was and is responsible for the conduct, policies and practices implemented and followed by its employees and agents.

10. Defendant ACH is a corporation licensed and incorporated in Illinois, with its principal officers registered in Peoria, Illinois, doing business as a medical provider for various county jails, including Peoria County Jail.

11. At all times material to this Complaint, Defendants KIMANI FITZGERALD, SHANNON MILLER, NURSE RYAN and ROE FITZGERALD ("Medical Defendants") were medical providers at the Peoria County Jail, employed by ACH and were responsible for the well-being and safety of detainees, including Sydney.

## ALLEGATIONS OF FACTS AND CLAIMS

12. On September 30, 2022, at approximately 12:45 p.m., a Peoria Police Officer observed Sydney Panozzo walking and "acting erratically" in the City of Peoria. After running her date of birth, it was discovered that she had a warrant out of Will County for drug possession with bond set at $5,000 at 10%.

13. A second Peoria Police Officer transported Sydney to the Peoria County Jail.

14. Once at the jail, the transporting police officer informed Defendant JEWEL SANDERS that's Sydney had "shot up" drugs before getting arrested.

15. Upon information and belief, Defendants Nurse KIM and Nurse RYAN observed Sydney and cleared her for acceptance into the Jail even though they were informed that she had just injected a drug.

16. During the processing into the Jail, Defendant SANDERS observed Sydney falling asleep while standing. Defendant SANDERS did not notify any medical staff of this observation.

17. Defendant RYGH took Plaintiff to the Intake Tech Box to be booked. Sydney was unable to be fingerprinted at the Jail as she began to vomit.

18. Defendants KERANS was made aware of Sydney's condition.

19. Defendant RYGH stopped the intake process and placed Sydney into Holding Cell C with other female detainees. Sydney began to vomit while in Holding Cell C. The other females in the cell tried to get the attention of the correctional officers, but none immediately came to the cell. There was a large amount of vomit.

20. Defendant KERANS was again eventually notified of the excessive vomit.

21. At this point, Sydney had been continuously vomiting for hours while in custody at the Peoria County jail.

22. Defendant FITZGERALD was called again to check on Sydney. While FITZGERALD tried to take Sydney's vitals, Sydney continued to vomit.

23. Sydney informed Defendants KERANS, FITZGERALD, RYGH and SHIVERS that she was sick and withdrawing from alcohol and heroin.

24. Upon information and belief, Defendant FITZGERALD contacted Defendant DURAN regarding Sydney and her condition. Defendant DURAN did not order that Sydney be transported to the hospital to receive the higher level of care that she needed.

25. Defendant FITZGERALD returned and informed Defendant KERANS and SHIVERS that Sydney would be placed on the list for "Withdrawal Protocol." No withdrawal protocol was started for Sydney.

26. At approximately 3:30 a.m., Defendant KERANS and SHIVERS placed Sydney in Detox Cell #2.

27. Throughout the early morning hours, Peoria County Sheriff's deputies observed Sydney flailing on the ground and vomiting while inside Detox Cell #2.

28. Other detainees in the intake area could hear Plaintiff asking for help and requesting medical attention, but no one came.

29. At approximately 7:20 a.m. on October 1, 2022, Defendant RYGH continued to notice that Sydney was vomiting and screaming. Again, Defendant RYGH did not notify medical staff or any supervisors.

30. Approximately four hours later, around 11:08 a.m. on October 1, 2022, Defendant RYGH noticed that Sydney's condition appeared to be deteriorating.

31. Defendant RYGH notified his supervisor, Defendant OWENS, of Sydney's condition.

32. Upon information and belief, medical staff were not notified of Sydney's worsening condition.

33. After being placed in Detox Cell #2, no medical staff ever appeared and checked Sydney's vitals again or questioned her regarding the severity of her withdrawal.

34. Sydney's condition continued to deteriorate, as observed by Defendants OWENS, RYGH and CANTERBURY. None of these Defendants checked Sydney's vitals or contacted medical staff.

35. On October 1, 2022, Officer Hughes was asked to go and finish the fingerprinting of Sydney. When Officer Hughes arrived at Detox Cell #2 to retrieve Sydney, he noticed that she was unresponsive and could not tell if she was breathing. Officer Hughes requested that Officer Garcia come and assist. When Officer Garcia arrived, he saw no movement and immediately

called for medical backup. No medical staff arrived. After multiple attempts to reach medical, Officer Hughes had to run to the medical staff to alert them. Finally, medical staff arrived at Detox Cell #2.

36. Sydney was eventually transported to the hospital where she was pronounced dead.

37. Each and every Peoria County Sheriff's employee and ACH employee who observed Sydney's condition knew that she was critically ill, had a serious medical need that was not being met, and needed to be hospitalized.

38. Each of the Defendants acted intentionally, with malice, willfulness, and deliberate indifference to the rights of Sydney, and violated her constitutional rights by willfully ignoring her serious medical needs.

39. As a result of the unjustified and unconstitutional conduct of each of the Defendants, Sydney experienced pain, suffering, emotional distress, injury, and ultimately death.

40. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has experienced, and will continue to experience into the future, pecuniary loss, including a loss of society, grief, sorrow, and mental suffering.

41. Plaintiff is entitled to relief against Defendants KIMANI FITZGERALD, SHANNON MILLER, ROE FITZGERALD, K. KERANS, JEWEL SANDERS, J. SHIVERS, JAMES RYGH, RUSSELL OWENS, and CANTERBURY under 42 U.S.C. § 1983, based on violations of the Fourteenth Amendment to the U.S. Constitution.

42. At all times material, Plaintiff's decedent, Sydney Panozzo, had a constitutionally protected right under the Fourteenth Amendment to the U.S. Constitution to receive needed care

while in the Peoria County Jail, and to have her health issues timely and properly assessed and treated.

43. Defendants deliberately disregarded the immediate and serious threats to Sydney's mental and medical health and well-being and exhibited deliberate and callous indifference to serious medical and mental health needs by denying access to intensive and structured medical health care, treatment and observation necessary to treat serious medical needs and prevent suffering and death.

44. Defendants are well aware that there were detainees confined in the Peoria County Jail who suffered from severe medical health needs and were at risk of injury and/or death. Despite this knowledge, Defendants intentionally and knowingly failed to provide serious, ongoing case management and treatment for such inmates and failed to regularly monitor their medical health care needs.

45. Defendants knew at all times material to this action that there was a substantial risk that detainees with serious medical issues, left substantially untreated, could die, that such deaths were reasonably foreseeable, and that the threat of this was imminent and immediate.

46. Defendants deliberately disregarded the immediate and serious threat to detainees' medical health and well-being and exhibited deliberate indifference and callous indifference to their serious medical and psychological needs by denying and unreasonably delaying access to competent medical care to treat their serious medical needs, in that:

(a) with full knowledge of prior in-custody deaths, and that failing to provide adequate medical care to detainees with serious medical issues could die were reasonably foreseeable, Defendants simply failed to provide needed

care and attention;

(b) with full knowledge of detainees with histories of serious medical issues, Defendants' actions in failing to provide close observation and adequate medical care by trained medical professionals was so grossly substandard, incompetent, and inadequate as to fairly be characterized as medical and mental health care so cursory as to amount to no medical and mental health care at all.

47. In light of the aforementioned, Sydney suffered from both an objectively and subjectively substantial risk of serious harm while under the care and custody of Defendants. Defendants reacted to this risk in an objectively and subjectively unreasonable manner.

48. It is more likely than not that the failures of Defendants as alleged above were the cause of Sydney's death.

49. As a result of Defendants' disregard of and indifference to Plaintiff's decedent's constitutionally protected right to be provided with proper care, Plaintiff's decedent's medical needs were ignored.

50. As a direct and proximate result of Defendants' deliberate indifference to Sydney's serious medical health needs, Sydney died from serious medical issues on October 1, 2022.

51. Plaintiff asserts the same state law claims against Defendants WATKINS and PEORIA COUNTY under the doctrine of *respondeat superior*, based on the actions and inactions of each of the individual correctional officers.

52. Plaintiff asserts the same state law claims against Defendant ACH under the doctrine of *respondeat superior*, based on the actions and inactions of each of the individual medical defendants.

53. Sydney is survived by her mother, father and four siblings, whom constitutes her heirs under Illinois law.

54. Sydney was officially pronounced dead on October 1, 2022.

55. The wrongful death of Sydney was proximately caused by the neglect, default, and/or willful and wanton conduct of the Defendants.

56. Plaintiff's state law claims are brought pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/0.01 et seq., for the pecuniary losses sustained by Sydney's next-of-kin, and the Illinois Survival statute, 755 ILCS 5/27-6, for Sydney's conscious pain and suffering prior to death.

57. Defendant ACH and ACH's employees failed to properly monitor and/or report the declining health and well-being of Sydney.

58. The wrongful conduct of Defendant ACH and ACH's employees was the direct and proximate cause of injury and damage to Sydney and her estate.

59. The heirs of Sydney have lost and will continue to lose pecuniary support, consortium, society, companionship as well as the love and affection of their daughter and sister, and have incurred funeral and burial expenses as a proximate result of her wrongful death.

60. Plaintiff additionally asserts Illinois state-law medical malpractice claims against defendants KIMANI FITZGERALD, SHANNON MILLER, and MONICA DURAN in that they

committed medical negligence by failing to cause Sydney to be sent to hospital for emergency medical care, and their failure to do so proximately caused Sydney's death. Plaintiff asserts the same state-law claims against defendant ACH under the doctrine of *respondeat superior*.

61. Plaintiff additionally asserts a state law indemnification claim against Defendants WATKINS and PEORIA COUNTY pursuant to 745 ILCS 10/9-102.

**PRAYER FOR JUDGMENT**

Accordingly, Plaintiff seeks judgment on her behalf and requests that appropriate compensatory and punitive damages be awarded against each of the Defendants on all federal law claims and that Plaintiff be entitled to reasonable attorneys' fees and costs, and that appropriate compensatory damages be awarded against each of the defendants on all state law claims.

By: /s/ Louis J. Meyer

Louis J. Meyer
MEYER & KISS, LLC
311 W. Stratford Drive
Peoria, IL 61614
t. 309.713.3751
f. 312.585.7803
e. louismeyer@meyerkiss.com
w. www.meyerkiss.com